Howard Daniels and Ronald Sellers, the warden and assistant warden, respectively, of the Camden Community Based Facility, petition for a writ of mandamus directing the trial court to transfer the underlying action pending in the Wilcox Circuit Court to the Montgomery Circuit Court. We grant the petition.
 Facts and Procedural History
Julius Finley, Jr., was an inmate at the Camden Community Based Facility, a work-release facility in Wilcox County operated by the Alabama Department of Corrections. While Finley was an inmate, Daniels was the warden of the facility, and Sellers was the assistant warden.
On May 2, 2002, Finley lost consciousness. He was allegedly placed in his bed at the facility, and, when he did not later regain consciousness, he was transported to Atmore Community Hospital on May 3, 2002. Finley died the next day.
In August 2003, Donna Walker, Finley's daughter and the personal representative of his estate, sued the Camden Community Based Facility; Wilcox County; and Daniels and Sellers, individually and in their official capacities, in the circuit court in Talladega County, where she resided.[1] The action sought damages for negligence, negligent supervision and training, and the denial of medical attention in violation of Finley's civil rights.
In a motion dated September 9, 2003, Wilcox County moved the Talladega Circuit Court to dismiss it from the case or to transfer the action to Wilcox County, the county in which the Camden Community Based Facility is located. Three days later, the Talladega Circuit Court transferred the case to the Wilcox Circuit Court.
On November 25, 2003, the Camden Community Based Facility, Daniels, and Sellers filed a motion to dismiss. This motion raised various defenses, including immunity and Walker's failure to state a claim upon which relief could be granted.
According to Walker, in January 2004 she "agreed" to dismiss Wilcox County from the action. However, all of the defendants were apparently dismissed from the case at that time. Walker filed a motion to alter, amend, or vacate the trial court's order insofar as it dismissed Daniels and Sellers from the action. The trial court granted this motion on January 30, 2004, by a stamp and the following notation on a copy of the motion: "Case reinstated; motion to dismiss is denied: order of dismissal is set aside and voided." The trial judge initialed the notation.[2]
On February 6, 2004, Walker amended the complaint to allege violations of 42 U.S.C. §§ 1983 and 1985 and to assert a claim under the Alabama Wrongful Death Act. This amended complaint specifies Daniels and Sellers as the defendants; it also includes fictitiously named defendants "A-D," who were guards or employees of the Camden Community Based Facility.[3]
On March 17, 2004, the Alabama Department of Corrections, which is not a *Page 254 
named party in this case, filed a motion in the trial court arguing that Ala. Code 1975, § 6-3-9, required that the action be transferred to the Montgomery Circuit Court. Walker filed an objection, and the trial court did not immediately rule on the motion.
On January 31, 2005, Daniels and Sellers filed a motion titled "Renewed Motion for Change of Venue and Stay of All Proceedings." This motion renewed the March 17 motion for a change of venue. Walker filed a response to the motion, arguing that both the March 17, 2004, motion filed by the Department of Corrections and the January 31, 2005, motion filed by Daniels and Sellers were due to be denied because: (1) Daniels and Sellers did not raise the issue of improper venue in their November 25, 2003, motion to dismiss, and (2) the March 17, 2004, motion was untimely.
According to the case action summary, on February 23, 2005, the trial court denied both motions to transfer. Daniels and Sellers subsequently filed a petition for a writ of mandamus requesting that the trial court be directed to transfer the action to the Montgomery Circuit Court. We grant the petition and issue the writ.
 Standard of Review
"`The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.'" Ex parte Pike Fabrication, Inc.,859 So.2d 1089, 1091 (Ala. 2002) (quoting Ex parte AlabamaGreat Southern R.R., 788 So.2d 886, 888 (Ala. 2000)).
 "A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."
Ex parte BOC Group, Inc., 823 So.2d 1270, 1272
(Ala. 2001). "This Court reviews mandamus petitions seeking review of a venue determination by asking whether the trial court exceeded its discretion in granting or denying the motion for a change of venue." Ex parte Perfection Siding,Inc., 882 So.2d 307, 310 (Ala. 2003).
 Discussion
Daniels and Sellers argue that Ala. Code 1975, § 6-3-9, requires that this case be transferred to Montgomery County. Section 6-3-9 provides:
 "All actions where the prison system or the state on account of the prison system is interested must be commenced in Montgomery County in any court having jurisdiction of the amount involved, except actions to condemn property under Section 18-1A-271, which must be commenced in the county where the property sought to be condemned is located. And if, on the trial of any case in any county, it is suggested by the Board of Corrections or is otherwise shown that the state is interested on account of the prison system, such case must be transferred to the proper court of Montgomery County. All actions commenced under this section must be commenced in the name of the state."
This Code section has been generally interpreted as controlling the venue of actions involving the prison system. See, e.g.,Ex parte Madison County, 406 So.2d 398 (Ala. 1981);Hartley v. State, 882 So.2d 869 (Ala.Civ.App. 2003); andPinkard v. State, 859 So.2d 449 (Ala.Crim.App. 2003).
In Ex parte Madison County, the plaintiffs filed in the Madison Circuit Court a declaratory-judgment action against the Governor of the State of Alabama, in his *Page 255 
capacity as temporary receiver of the prison system of Alabama; the commissioner of the Department of Corrections; and others. 406 So.2d at 399. The action sought declaratory relief regarding, among other things, the confinement of state prisoners in the Madison County jail. The Governor and. the commissioner moved the trial court to transfer the case to the Montgomery Circuit Court, arguing that § 6-3-9 mandated such a transfer. The trial court granted the motion, and the plaintiffs petitioned this Court for a writ of mandamus directing the trial court to vacate its order transferring the case.
In denying the petition, we stated:
 "The plain language of this statute mandates the venue as Montgomery County when the State Prison System `is interested.' That phrase, in fact, is repeated within the body of the statute. The phrase `[a]ll actions' is clear and unambiguous, and means what the phrase describes, `[a]ll actions,' whether those initiated by the state or those in which the state's `system' is a party. The concluding sentence of the statute refers to only one category of `[a]ll actions,' i.e., those commenced by the state — those must be commenced in the state's name (rather than in the names of those holding positions of authority). Cf. Moore v. Stephens, 264 Ala. 86, 84 So.2d 752 (1956) (Syl. 4).
 "The petitioners' scholarly argument in brief dealing with the historical development of and changes in this statute to the effect that its present language signifies a legislative intent to govern only those actions filed by the state, is unpersuasive. Our cases uniformly hold that plain language in a statute should be considered to mean what it says. Fletcher v. Tuscaloosa Fed. Sav. and Loan Assn., 294 Ala. 173, 314 So.2d 51 (1975); State v. Robinson Land Lumber Co. of Ala., 262 Ala. 146, 77 So.2d 641 (1955); Hawkins v. Jefferson County, 233 Ala. 49, 169 So. 720 (1936). Accordingly, we hold that § 6-3-9 controls the venue of this action. The Governor of Alabama, as `Temporary Receiver' of the prison system, and the Prison System Commissioner are made parties defendant. The state `on account of the prison system' is interested in the action because those officials in their official capacities are sought to be made liable for past and future expenditures made by the plaintiffs on behalf of state prisoners housed in the Madison County jail."
Ex parte Madison County, 406 So.2d at 400-01.
The Department of Corrections is vested with all the responsibilities, powers, and authority previously vested in the Board of Corrections. Ala. Code 1975, § 14-1-1.1. Additionally, the Department of Corrections "is a department of the State." Latham v. Department of Corr.,927 So.2d 815, 820 (Ala. 2005). Daniels and Sellers are each being sued in their official capacities as warden and assistant warden, respectively, for acts performed in operating a corrections facility and caring for an inmate. Consequently, Walker essentially asserts claims against the Department of Corrections and the State of Alabama. See Haley v. Barbour County,885 So.2d 783, 788 (Ala. 2004) ("[C]laims against state officers in their official capacity are `functionally equivalent' to claims against the entity they represent."). Thus, it is clear that "the state is interested" in this action "on account of the prison system." See Hartley v. State, 882 So.2d 869,871 (Ala.Civ.App. 2003) (holding that, for purposes of §6-3-9, an action against a warden of a correctional facility based on conditions at the facility is a suit against "the state prison system"). *Page 256 
The plain language of § 6-3-9 does not require that the Department of Corrections or the State be named as a party; instead, it must merely be "suggested by the [Department] of Corrections or . . . otherwise shown that the state is interested on account of the prison system. . . ." At that point, the case "must" be transferred to Montgomery County. It would thus appear that, under the plain language of 6-3-9, the instant case "must" be transferred to the Montgomery Circuit Court pursuant to § 6-3-9. See Ex parte MadisonCounty, supra; Hartley, supra. Walker, however, argues that the requests to transfer in this case are untimely because Daniels and Sellers did not request a change of venue in their November 25, 2003, motion to dismiss.
Under Rule 12, Ala. R. Civ. P., a claim of improper venue generally must be raised in the first responsive pleading by a party or in a motion filed before the first responsive pleading. See Rule 12(b), (g), and (h), Ala. R. Civ. P. If it is not raised, the issue may be deemed waived. See Ex parteTill, 595 So.2d 871, 872 (Ala. 1992) ("Rule 12(b), therefore, requires that a claim of `improper venue' be made in the responsive pleading or in a motion filed before the responsive pleading. . . . If a party fails to raise a Rule 12(b)(3) objection in the first responsive pleading or in a motion filed before that first responsive pleading, the objection is waived.").
Howell, the plaintiff in Ex parte Children's Hospital ofAlabama, 721 So.2d 184 (Ala. 1998), was struck by an automobile while he was riding a bicycle in Walker County. He was initially treated at a hospital in Walker County, but he was later transported to Children's Hospital in Jefferson County. Subsequently, Howell filed an action in Walker County against several defendants, including the driver of the automobile that struck him. Howell later amended the complaint to add a medical-malpractice action against fictitiously named defendants who had treated him at the hospital in Walker County, as well as certain health-care providers in Jefferson County, including Children's Hospital.
Children's Hospital moved to transfer the action to Jefferson County, but the trial court denied the motion. Subsequently, during four years of discovery, Howell amended the complaint several times. After the final amendment, Children's Hospital and the other health-care providers again moved the trial court to transfer the action to Jefferson County pursuant to Ala. Code 1975, § 6-5-546. A hearing was held on the motion to transfer, and Howell's counsel stated that no Walker County health-care providers would be named as defendants. The trial court subsequently denied as untimely the Jefferson County health-care providers' motions to transfer. Children's Hospital then petitioned this Court for a writ of mandamus.
This Court granted the petition and issued the writ. We held that the plain language of Ala. Code 1975, § 6-5-546, required a change of venue. Section 6-5-546 provides, in pertinent part:
 "In any action for injury or damages or wrongful death whether in contract or in tort against a health care provider based on a breach of the standard of care, the action must be brought in the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred. If plaintiff alleges that plaintiff's injuries or plaintiff's decedent's death resulted from acts or omissions which took place in more than one county within the State of Alabama, the action must be brought in the county wherein the plaintiff resided at the time of the act or omission, if the action is *Page 257 
one for personal injuries, or wherein the plaintiff's decedent resided at the time of the act or omission if the action is one for wrongful death. If at any time prior to the commencement of the trial of the action it is shown that the plaintiff's injuries or plaintiff's decedent's death did not result from acts or omissions which took place in more than one county, on motion of any defendant the court shall transfer the action to such county wherein the alleged acts or omissions actually occurred. . . ."
(Emphasis added.) We noted in Ex parte Children'sHospital:
 "Under § 6-5-546, if the acts or omissions giving rise to medical liability occurred in one county, an action based on those acts or omissions `must' be brought in that county. If the acts or omissions giving rise to medical liability occurred in more than one county, however, then an action based on those acts or omissions `must' be brought in the county where the plaintiff resided at the time of the acts or omissions."
721 So.2d at 188.
Howell argued that the motions for a change of venue filed by the Jefferson County health-care providers were untimely under Rule 12(h)(1), Ala. R. Civ. P., and Rule 82(d)(2)(C), Ala. R. Civ. P. These provisions, we noted, generally control the timing of challenges to venue:
 "Rule 12(h)(1) provides the general timing rule applicable to a defendant's challenge of venue by a motion or responsive pleading. Rule 82(d)(2)(C)(i) provides the general timing rule for multiple-party actions, requiring a defendant to challenge venue within 30 days of the dismissal of the party that had made venue proper in the forum. If the defendant did not strictly adhere to the timing requirements, his challenge to venue was waived. Rules 12(h)(1), 82(d)(2)(C)(iii), Ala. R. Civ. P.
 ". . . [I]n drafting a new statute with respect to a particular cause of action, the Legislature can either default to the general venue statutes, by not mentioning venue, or it can make special statutory provisions for venue for that particular cause of action. Similarly, with respect to challenges to venue, the Legislature can leave the timing of such challenges to the general provisions of the rules, by not mentioning a timing requirement for challenging venue; this is what it did in §§ 6-3-2, 6-3-6, and 6-3-7. Alternatively, it could make special provisions for the timing of challenges to venue, by specifically addressing such timing in the statute. . . ."
721 So.2d at 187-88 (footnotes omitted). The main opinion inEx parte Children's Hospital went on to hold that, in light of the plain language of 6-5-546, the waiver and timing provisions of Rule 12(h)(1) and Rule 82(d)(2)(C) did not apply:
 "All of the Health Care Defendants moved to transfer the claims to Jefferson County. Howell contends that their motions were untimely under the general timing provisions of Rule 12(h)(1) and Rule 82(d)(2)(C)(i). Based on the plain language of the timing sentence of § 6-5-546, we disagree.
 "The 1987 Act also addressed the timing of venue challenges. Evidently unsatisfied with the application of the general timing provisions of the rules to medical liability actions, the Legislature chose not to default to Rule 12(h)(1) or Rule 82(d)(2)(C)(i) by remaining silent. Instead, it expressly provided a special timing sentence in § 6-5-546. See [City of Birmingham v.] Hendrix, 257 Ala. [300] at 307, 58 So.2d [626] at 633 [(1952)]. The special timing sentence in § 6-5-546 reads: *Page 258 
 "`If at any time prior to the commencement of the trial of the action it is shown that the plaintiff's injuries or plaintiff's decedent's death did not result from acts or omissions which took place in more than one county, on motion of any defendant the court shall transfer the action to such county wherein the alleged acts or omissions actually occurred.'
 "(Emphasis added.) The plain meaning of these words is that if `at any time prior to the commencement of the trial,' any party `show[s]' that venue is improper under § 6-5-546, a single defendant may then make a `motion' to transfer the [medical] malpractice claims, and the trial court `shall' grant that motion. . . . By providing that both the showing of improper venue and the motion to transfer could be made `at any time prior to the commencement of the trial,' the Legislature showed a clear intent to assure that the new venue benefit conferred on health care defendants would not be vitiated by the strict timing provisions of Rule 12(h)(1) and Rule 82(d)(2)(C)."
721 So.2d at 189. See also Ex parte Kennedy,656 So.2d 365, 367-68 (Ala. 1995) (holding that § 6-5-546 supersedes any contradictory provisions of Rule 82(c), Ala. R. Civ. P., governing venue when claims or parties have been joined).
The language of § 6-3-9 is similar to the language of §6-5-546, and we find the rationale of Ex parte Children'sHospital persuasive. Section 6-3-9 states that a case "must" be transferred to Montgomery County "if, on the trial of any case," it is suggested by the Department of Corrections or is otherwise shown that the State is interested in the case "on account of the prison system." The plain language of the phrase "if, on the trial of any case" indicates that the suggestion (or demonstration) that the State is interested may be made, as in this case, before trial. Thus, § 6-3-9, like § 6-5-546, contains an express timing provision that is not "vitiated by the strict timing provisions of Rule 12(h)(1)." Ex parteChildren's Hospital, 721 So.2d at 189. See also Exparte Kennedy, supra. The suggestion that the State and the Department of Corrections were interested in the instant case and in the transfer of the case was first made on March 17, 2004, and this case has yet to go to trial. Therefore, under the plain language of § 6-3-9, the suggestion that the case must be transferred to Montgomery County was not waived by failing to raise the transfer issue in the November 25, 2003, motion to dismiss.
Walker also alleges that the issue of improper venue has been waived because, she argues, Daniels and Sellers should have petitioned for a writ of mandamus, but did not, when their November 25, 2003, motion to dismiss was denied in January 2004. Additionally, Walker argues that Daniels and Sellers failed to raise the issue of improper venue at an October 18, 2004, pretrial conference and did not object when the action was transferred from the Talladega Circuit Court to the Wilcox Circuit Court.
As Walker notes, Daniels and Seller's November 25, 2003, motion to dismiss did not assert that venue in Wilcox County was improper; thus, they could not have sought a writ of mandamus directing the trial court to vacate its order denying that motion and to transfer the case because the trial court's order did not address a request to transfer. As to the issue of the October 18, 2004, pretrial conference, which was scheduled pursuant to a general pretrial scheduling order, the materials before us simply do not indicate what issues were discussed at the conference, and it appears from the case action summary that another "pretrial conference" was scheduled for February 23, 2005, the day *Page 259 
the motions for a change of venue were denied. Finally, the Talladega Circuit Court immediately transferred the action to the Wilcox Circuit Court on Wilcox County's motion, and it is unclear whether Daniels and Seller even had an opportunity to object to that transfer; in any event, as noted above, the requests to transfer were timely filed under § 6-3-9. We are therefore unable to conclude that the issue of improper venue under § 6-3-9 was waived.[4]
 Conclusion
The plain language of § 6-3-9 requires that this action be transferred from Wilcox County to Montgomery County, and the request to transfer the case was not untimely; therefore, the trial court is directed to transfer this action to the appropriate court in Montgomery County.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[1] The caption of the complaint also lists the City of Camden as a defendant; however, the body of the complaint does not allege any wrongdoing by the City of Camden.
[2] The trial court's notation appears to set aside its entire order of dismissal. However, Walker's motion only requested that the ruling dismissing Daniels and Sellers be set aside. From the pleadings filed in this Court, it appears that only Daniels and Sellers remain as parties in the underlying action and that the Camden Community Based Facility and Wilcox County are no longer parties.
[3] It does not appear that Daniels and Sellers have filed answers in this case.
[4] Our decision in this case should not be construed as interpreting § 6-3-9 to disallow the waiver of a claim of improper venue under that Code section. See Ex parteTanksley, 418 So.2d 94 (Ala. 1982) (holding that under the facts of that case the plaintiffs particular conduct and belated request to transfer the case waived the issue of improper venue). Instead, the facts of this case simply do not demonstrate that the issue of improper venue was waived.